UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>MATTHEW STARSIAK,<br>AMK ENERGY SERVICES LLC, and<br>JOHN DOES 1 THROUGH 10, whose<br>true names are largely unknown,<br><br>        Defendants. | Court File No.:  0:20-cv-01314 (SRN/TNL)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(2) MOTION TO DISMISS** |

## INTRODUCTION

This lawsuit involves plaintiff 3M Company's ("3M") unfounded claims of trademark infringement and other alleged commercial misconduct against Matthew Starsiak ("Starsiak"), a decorated, disabled former United States Marine, and his service-disabled veteran-owned small business, AMK Energy Services LLC ("AMK").  3M alleges an approximately one-month effort on the part of Starsiak and AMK—ultimately fruitless—to facilitate the purchase of 3M respirators on behalf of philanthropic interests as a buyer's broker.  3M also alleges AMK attempted to sell 3M respirators to one company—Star Brands Group.  No contracts were finalized and no purchases were ever consummated.  In fact, neither Starsiak nor AMK have ever sold a single 3M respirator in the commercial arena, nor have they used 3M's "famous trademarks" in connection with the single alleged sales effort.

Regardless of whether there is any substantive merit to 3M's claims, the Complaint raises a threshold issue of personal jurisdiction. 3M alleges in conclusory fashion that Starsiak and AMK "purposefully availed themselves of the privilege of transacting business within the State of Minnesota," but provides no evidence of any such transactions or any other relevant connection to Minnesota that would support the exercise of personal jurisdiction here consistent with constitutional due process requirements. At all times relevant to the Complaint, Starsiak and AMK operated their business out of Bountiful, Utah. Neither Starsiak nor AMK's officers or employees are registered to conduct business in Minnesota, own or maintain any offices, bank accounts, or real property in Minnesota, advertise or solicit business in Minnesota, have agents in Minnesota, or otherwise avail themselves of any of the benefits or protections of Minnesota's laws. In fact, Starsiak has never been to Minnesota for any purpose.

3M's Complaint alleges isolated telephone and email contact with certain 3M representatives located in Minnesota over the relevant one-month timeframe. But numerous Eighth Circuit cases, along with this Court, have held such activity is insufficient to justify the exercise of personal jurisdiction—even in situations where, unlike here, a contract is actually finalized and operative as to the parties. Defendants' lack of any material connection to Minnesota is fatal to 3M's claim of specific personal jurisdiction over them in this action.

Because Starsiak and AMK have no presence in or material connection to Minnesota, and have not directed any activities toward Minnesota that would subject

them to general or specific jurisdiction in this forum consistent with constitutional requirements, dismissal of this action is appropriate under Fed. R. Civ. P. 12(b)(2).

## FACTUAL BACKGROUND

### I. PARTIES

#### A. Plaintiff

Plaintiff 3M is a Delaware corporation with its headquarters located in St. Paul, Minnesota. (Complaint [Doc. 1] ("Compl.") ¶ 19.) 3M is a Minnesota-based manufacturer of various consumer and industrial products, including respirators. (*Id*.)

#### B. Defendants

##### 1. Matthew Starsiak

Defendant Starsiak resides in and is a citizen of Utah. (Declaration of Matthew Starsiak ("Starsiak Decl.") ¶ 2.) Starsiak is a disabled former United States Marine. (Starsiak Decl. ¶¶ 3-5.) He served in the Marine Corps for nearly twenty-four years, retiring in 2015 with an honorable discharge. (*Id.* ¶ 3, Ex. A.) In 2017, Starsiak founded AMK with the intent of supporting fellow disabled veterans in obtaining employment providing humanitarian services such as HUD home reconstruction and affordable residential and commercial housing projects. (*Id.* ¶ 6.)

##### 2. AMK Energy Services LLC

Defendant AMK is a Utah limited liability company. (Starsiak Decl. ¶ 7, Ex. D.) AMK is a Service-Disabled Veteran-Owned Small Business (SDVOSB) verified by the United States Department of Veterans Affairs. (*Id.* ¶ 8, Ex. E.) AMK assists in disaster

3

relief operations, largely by hiring former veterans as independent contractors. (*Id.* ¶ 9.) AMK has assisted in disaster relief projects in the United States and Puerto Rico. (*Id.*)

## II.   THE COMPLAINT

The Complaint cavalierly asserts, without any proof, that "Starsiak is a con man who trades on his military service" so that he can "deceive others" and "take their money." (Compl. ¶ 20.) As noted above, Starsiak is a disabled military veteran with an exemplary record who operates his business, AMK, seeking to provide employment opportunities to other veterans. At the times relevant to the Complaint, Starsiak and AMK were attempting to facilitate the purchase of masks from 3M as a buyer's broker on behalf of an individual who advised he represented charitable interests. However, given the chaos prevailing in the marketplace for respirators at the time, Starsiak was ultimately unable to close any mask transactions involving the sale of any 3M respirator.

The Complaint identifies the following limited connections between 3M and Starsiak/AMK, all of which occurred over a short time period in May 2020:

1.   On May 10, 2020, Maryland-based attorney Eric Schuster sent an email to Ivan Fong, 3M's Senior Vice President, General Counsel, and Secretary, forwarding an email from Mr. Starsiak, in which Mr. Starsiak explained he had a client asking him to try to purchase masks from 3M for charitable purposes. (Compl. ¶ 47.)

2.   On May 11, 2020, telephone conferences occurred between Mr. Starsiak and Haley Schaffer, 3M Senior Counsel, in which Mr. Starsiak explained his background and desire to coordinate a potential purchase of masks, consistent with Mr. Starsiak's email the day before. (Compl. ¶ 51.)

3. On May 13, 2020, Ms. Schaffer sent Mr. Starsiak an email in which she declined Mr. Starsiak's request, following which Mr. Starsiak replied thanking her for her time. (Compl. ¶ 55.)

3M further asserts that Mr. Starsiak made certain representations in a series of phone calls with Star Brands Group, also in May 2020, but these allegations have nothing to do with Minnesota, as Star Brands Group is based in New York. *See* Compl. ¶ 58 (Star Brands Group is a "New York-based PPE supplier"). Neither Starsiak nor AMK have ever sold a single 3M respirator in the commercial arena to Star Brands Group or to any other customer. (Starsiak Decl. ¶ 15.) And neither Starsiak nor AMK are currently making any effort to broker or sell 3M respirators, nor do they intend to do so in the future. (*Id.*)

## LEGAL ARGUMENT

### I.   LEGAL STANDARD FOR PERSONAL JURISDICTION

The "primary focus" of the personal jurisdiction inquiry is "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017). And the "primary concern" in evaluating personal jurisdiction is "the burden on the defendant." *Id.* at 1780 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Assessing this burden "requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.*

The exercise of general and specific personal jurisdiction must meet both state and constitutional prerequisites. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citing *Wines v. Lake Havasu Boat Mfg.*, 846 F.2d 40, 42 (8th Cir. 1988)). Minnesota's long-arm statute has been held to be co-extensive with the limits of due process; thus, the court only needs to address whether personal jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *NexGen HBM, Inc. v. ListReports, Inc.*, Case No. 16-cv-3143 (SRN/FLN), 2017 WL 4040808, *7 (D. Minn. Sept. 12, 2017) (citing *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016), *cert. denied*, 137 S. Ct. 1331 (2017)).

Due process permits the exercise of personal jurisdiction over a non-resident defendant when that defendant has "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These minimum contacts can be deemed to exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. "Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)). The "purposeful availment" requirement ensures that a non-resident defendant cannot be haled into a jurisdiction solely as a result of

"random," "isolated," or "fortuitous" contacts. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

The Eighth Circuit uses a five-factor test in order to evaluate the propriety of a court's exercise of personal jurisdiction over a non-resident defendant. The test considers the following: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996)).

The third factor—relation of the cause of action to the contacts—highlights the distinction between general and specific jurisdiction. General jurisdiction exists when the affiliations of a corporation or other business organization "are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (emphasis in original).

By contrast, specific jurisdiction is "very different" and requires that the lawsuit "aris[e] out of or relat[e] to the defendant's contacts with the *forum*." 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 126) (emphasis in original); *see also Walden*, 571 U.S. at 285 (minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" 137 S. Ct. at 1780. As such, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* "[T]he party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath, Inc.*, 760 F.3d at 820.

## II. GENERAL JURISDICTION OVER DEFENDANTS DOES NOT EXIST BECAUSE STARSIAK AND AMK HAVE NO CONNECTION TO—LET ALONE A "CONTINUOUS AND SYSTEMATIC" CONNECTION RENDERING THEM ESSENTIALLY AT HOME IN—MINNESOTA.

Neither Starsiak nor AMK has any relevant connection to Minnesota, other than the fact that 3M representatives with whom they communicated with potentially reside in Minnesota. As the *Daimler* Court observed:

> *Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home . . . With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.

8

571 U.S. at 137.

In this case, Starsiak and AMK are based in Bountiful, Utah.  (Starsiak Decl. ¶ 2, 7; Ex. D.)  Neither Starsiak nor AMK are registered to transact business in Minnesota.  (*Id.* ¶ 10.)  Neither Starsiak nor AMK maintain any offices, bank accounts, or real property in Minnesota, advertise or solicit business in Minnesota, or otherwise direct their activities to the state of Minnesota.  (*Id.* ¶¶ 11-12.)  Neither Starsiak nor AMK have any agents for service of process in Minnesota.  (*Id.* ¶ 13.)  In fact, Starsiak has never even traveled to Minnesota, whether in connection with any activity alleged in the Complaint or for any other purpose.  (*Id.* ¶ 14.)

In sum, neither Starsiak nor AMK have any relevant connection to the state of Minnesota.  And none of Defendants' conduct—whether as alleged in the Complaint or more generally—establishes general jurisdiction over them in Minnesota.

**III.    NO SPECIFIC JURISDICTION EXISTS OVER DEFENDANTS BECAUSE 3M'S ALLEGATIONS AGAINST DEFENDANTS HAVE NO CONNECTION TO MINNESOTA AND DO NOT DEMONSTRATE ANY PURPOSEFUL AVAILMENT BY DEFENDANTS OF ITS LAWS.**

The "affiliation" between Minnesota and the underlying controversy that is a prerequisite to specific jurisdiction is wholly absent here.  None of the Complaint's allegations relate to any conduct by defendants in the state of Minnesota.  Instead, the only relationship that Minnesota has to this controversy is the fortuity that 3M's headquarters and some of its employees reside there.  As such, specific personal jurisdiction does not exist over defendants in this forum.

It is well-settled that "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'" *Eagle Technology v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)); *see also Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (holding 100 telephone calls by defendant to plaintiff were "insufficient, alone, to confer personal jurisdiction"). Similarly, a defendant's communication with an out-of-state third party, who in turn has contacts with the forum state, is a contact with the forum state that is too tenuous to satisfy the first personal jurisdiction factor. *Nash Finch Co. v. Preston*, 867 F. Supp. 866, 868-69 (D. Minn. 1994). In fact, even a *contract* with a citizen of a State, standing alone, is insufficient to establish minimum contacts with that forum. *CHS, Inc. v. Farmers Propane Inc.*, 397 F. Supp. 3d 1324, 1330-31 (D. Minn. 2019) (citing *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015)).

In *Eagle Technology*, a consulting company and its owner, Bakker, brought suit against a Swedish holding company, Expander Global, and its United States subsidiary engaged in industrial manufacturing, Expander Americas, following termination of an independent contract agreement under which Eagle provided consulting services to these entities. Eagle initially provided consulting services to the United States subsidiary, but

10

its role expanded such that Bakker was eventually appointed Chief Information Officer and Chief Financial Officer of the foreign holding company. 783 F.3d at 1135. No written employment agreement memorialized this new role, but Bakker performed some related duties from his home in Missouri. Bakker contended that he attended a planning meeting in Missouri with representatives from Expander Americas and Expander Sweden, another operating subsidiary of Expander Global. *Id.* Bakker also asserted that he "participated in telephone conference calls and had several hundred contacts via phone and email with employees of the Expander companies and outside consultants." *Id.* The Eighth Circuit affirmed the district court's dismissal of Expander Global for lack of personal jurisdiction, agreeing with Expander Global that it lacked the requisite contacts with Missouri to fulfill the first three factors, since its only contact with Missouri was its business relationship with Bakker, and that relationship was insufficient to justify imposing personal jurisdiction. *Id.* at 1136.

In *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869 (D. Minn. 2019), the estate of recording artist Prince Rogers Nelson (Prince) sued several individuals and entities claiming they unlawfully possessed and commercially exploited several Prince sound recordings. 361 F. Supp. 3d at 874. Among the named defendants was a Massachusetts law firm, Brown & Rosen (B&R), who provided prior legal advice to certain of the other defendants. The Court found that it lacked jurisdiction over B&R:

> Although Plaintiffs allege that B&R encouraged Defendants to distribute the Prince Recordings, Plaintiffs concede that B&R did not directly sell the music. Merely encouraging another party to place an item in the stream of commerce does not establish personal jurisdiction over B&R. *See Asahi*, 480 U.S. at 112, 107 S. Ct. 1026. Plaintiffs' other allegations concerning

11

>phone calls, emails, and the opinion letter also fall short.  B&R is not a Minnesota law firm and its clients in this matter were not Minnesota residents.  Plaintiffs make no allegations that B&R was compensated by the Prince Estate, travelled to Minnesota, or solicited business in Minnesota.  Absent other contacts, B&R's emails, phone calls, and opinion letter are not so purposefully directed to Minnesota to justify this Court's exercise of personal jurisdiction over B&R.  *See Burlington*, 97 F.3d at 1103; *Nash Finch Co.*, 867 F. Supp. at 868-69.

361 F. Supp. 3d at 877-78.  As such, the Court dismissed B&R from the case for lack of personal jurisdiction.

And in *Pederson v. Frost*, Civ. No. 17-cv-5580 (WMW/BRT), 2018 WL 4358193 (D. Minn. Sept. 13, 2018), the Court reaffirmed the principle that "[m]erely conducting business with a resident of the forum 'does not provide the requisite contacts between a [nonresident] defendant and the forum state.'"  *Id.* at *2 (quoting *Mountaire v. Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982)).  The Court determined that the plaintiff himself was the "only nexus between Defendants and Minnesota," and that he "identified no facts to establish that Defendants specifically sought to avail themselves of any benefit or legal protection that is uniquely afforded by Minnesota independent of their relationship with [plaintiff]."  *Id.* at 2.  As such, no personal jurisdiction existed.

The level of forum contact in *Eagle Technology*, *Paisley Park*, and *Pederson* easily exceeds that of Starsiak and AMK in this case, yet dismissal for lack of personal jurisdiction was deemed to be warranted in those cases.  Thus, the rationale for dismissal is even more forceful here.  3M alleges the following contacts between it and Mr. Starsiak:

- A May 10, 2020 email from Mr. Starsiak that Maryland-based attorney Eric Schuster forwarded to Ivan Fong, 3M's Senior Vice

12

    President, General Counsel, and Secretary in which Starsiak explains that he had a client who had asked him to try to purchase masks for philanthropic purposes;

- May 11, 2020 telephone calls between Mr. Starsiak and Haley Schaffer, 3M Senior Counsel, in which Mr. Starsiak explained his background and desire to coordinate a potential purchase of masks; and

- A May 31, 2020 email in which Ms. Schaffer declined Mr. Starsiak's request, following which Mr. Starsiak replied thanking her for her time.

Taken together, 3M's allegations present the very definition of "random," "isolated," or "fortuitous" contacts that are held insufficient to establish personal jurisdiction as a matter of law. *Keeton*, 465 U.S. at 774.[1] There is no dispute that no sales or supply agreement was ever initiated or negotiated—let alone finalized—between 3M or its distributors, on the one hand, and Starsiak or AMK, on the other. 3M's lawsuit is premised upon a mere generalized suspicion of misconduct involving third parties with no connection to Minnesota. Simply put, the only connection this lawsuit has to Minnesota is 3M's corporate residence here, which undoubtedly makes it a convenient forum for 3M, but which has no bearing on the relevant jurisdictional analysis. Because the requisite minimum contacts do not exist between Starsiak, AMK, and Minnesota, personal jurisdiction is lacking and the Complaint should be dismissed.

---

[1] 3M further asserts that Mr. Starsiak engaged in phone contact with Star Brands Group, but these allegations have nothing to do with Minnesota. *See* Compl. ¶ 58 (Star Brands Group is a "New York-based PPE supplier").

## **CONCLUSION**

Defendants have no connection to Minnesota. The only link between Mr. Starsiak, AMK and Minnesota—if any—are the 3M representatives to whom Mr. Starsiak briefly corresponded and spoke over a limited period of days in May 2020. This is plainly insufficient to establish minimum contacts that comport with due process. For this reason, dismissal is appropriate under Fed. R. Civ. P. 12(b)(2).

                                            Respectfully submitted,

                                            **MEAGHER & GEER, P.L.L.P.**

Dated: June 24, 2020                By:  s/Robert W. Vaccaro
                                                  Timothy R. Schupp (#130837)
                                                    Robert W. Vaccaro (#0313750)
                                                    33 South Sixth Street, Suite 4400
                                                    Minneapolis, MN  55402
                                                    Telephone:   (612) 338-0661
                                                    Facsimile:    (612) 338-8384
                                                    Email: tschupp@meagher.com
                                                                rvaccaro@meagher.com

                                                    *Attorneys for Defendants Matthew Starsiak and AMK Energy Services LLC*