# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY, | Court File No.: 0:20-cv-01314 (SRN/DTS) |
| Plaintiff, | |
| v. | |
| MATTHEW STARSIAK, | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| AMK ENERGY SERVICES LLC, and JOHN DOES 1 THROUGH 10, whose true names are largely unknown, | |
| Defendants. | |

On June 5, 2020, Plaintiff 3M Company ("3M") filed its Complaint [Doc. 1] against Defendants—a disabled former United States Marine and his Service-Disabled Veteran-Owned Small Business—with no prior notice, whether in the form of a cease-and-desist letter or any other communication apprising Defendants of 3M's purported claims. The underlying challenged conduct occurred in May 2020. At the time 3M filed its Complaint, it did not file a motion seeking any form of expedited relief. Instead, 3M waited more than two weeks to do so, but now claims that it requires "immediate" action from the Court. Consistent with its prior heavy-handed approach, 3M provided Defendants with two days' notice of the hearing on its present request.

Given the late notice, Defendants are not able to fully and appropriately respond to 3M's voluminous filings. However, the Court should be apprised of the following matters in advance of the TRO hearing later today:

1. Yesterday, Defendants filed a Rule 12(b)(2) Motion to Dismiss the Complaint in this matter [Doc. 27], because no personal jurisdiction exists over the Defendants, both of whom are based in Utah. Defendants' motion establishes the lack of Defendants' connection to Minnesota and 3M's overreach as to personal jurisdiction in this case. *See generally* Defendants' Memo. of Law in Supp. of Rule 12(b)(2) Mot. to Dismiss [Doc. 29]. Defendants respectfully submit that the threshold jurisdictional issues identified in Defendants' motion must be addressed prior to the issuance of any ruling on 3M's request for preliminary relief. *Zimmerman v. United States Football League*, 637 F. Supp. 46, 48 (D. Minn. 1986) (citing *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (district court cannot issue temporary restraining order unless it has personal jurisdiction over the defendants). By submitting this short response to 3M's motion, Defendants do not intend to, and do not, waive their objections as to jurisdiction in this matter.

2. A plaintiff seeking a temporary restraining order or preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). 3M cannot establish the requisite four factors to obtain a temporary restraining order or preliminary injunction. First, as explained in Defendants' Motion to Dismiss, Defendants have not sold a single 3M respirator in commerce, whether to the sole customer 3M identifies—Star Brands Group, based in New York—or

to any other customer, nor do they intend to make any such efforts in the future. *See* Declaration of Matthew I. Starsiak in Support of Defendants' Rule 12(b)(2) Motion to Dismiss ("Starsiak Decl.") [Doc. 30] ¶ 15. Despite its various filings, and the assorted conclusory and *ad hominem* attacks made against Defendants therein, 3M has presented no proof of any ongoing harm. 3M simply asks the Court to assume it. 3M has not demonstrated it is likely to suffer irreparable harm without preliminary relief.

3. In addition to the lack of irreparable harm, 3M cannot demonstrate a likelihood of success on the merits. The single alleged solicitation of New York-based Star Brands Group is most analogous to a recent 3M-related case from the United States District Court for the Northern District Court of Florida, *3M Company v. 1 Ignite Capital, LLC*, Case No. 4:20-cv-225 (May 7, 2020), in which the court denied 3M's application for preliminary relief. 3M referenced this case in a footnote to its supporting brief[1], but did not attach a copy of the transcript from the TRO hearing. Defendants submit that transcript for the Court's consideration. (Declaration of Robert W. Vaccaro ("Vaccaro Decl."), Ex. A.)

4. In the *1 Ignite Capital* case, Judge Allen Winsor expressed significant skepticism over the merits of 3M's claims, in particular price gouging assertions purportedly brought on behalf of third parties, past harm, future harm, and consumer confusion. Specifically with respect to the single alleged solicitation involved in *1 Ignite Capital*, Judge Winsor wondered how consumer confusion could be demonstrated where

---

[1] 3M Memo. in Supp. of Mot. for Temp. Restraining Order and Preliminary Injunction ("3M Memo.") [Doc. 10] at 2 n.1.

the customer "didn't act on" the alleged solicitation. (Vaccaro Decl., Ex. A at 16.) In this case, although the Declaration of Matthew Hise formulaically alleges "confusion" (*see*, *e.g.*, Hise Decl. [Doc. 16] ¶ 7; 3M Memo. at 20), it is undisputed Mr. Hise did not act on any solicitation from Defendants and, in fact, immediately reported the matter directly to 3M. (Compl. ¶ 65.) Despite this single alleged solicitation, which resulted in no product sale, 3M tells the Court this case is "among the most serious . . . made to 3M during this pandemic[.]" (3M Memo. at 2.)

5. Among its various filings, 3M nowhere identifies any communication in which Defendants have actually used 3M's marks. In addition, 3M asserts false affiliation by Defendants, but the actual transcript 3M attached to the Hise Declaration demonstrates Mr. Starsiak did not claim AMK to be a 3M authorized distributor; rather, Mr. Starsiak said AMK worked with various distributors:

```
 2     MATT STARSIAK:  So gentleman, so -- okay, we have
 3     various distributors that we work with, okay?  I pull
 4     them off the board.  It's not a complicated process.
 5     We have six different distributors that we use in the
 6     U.S., and then we have two different distributors that
 7     we use outside the U.S.  These are 3M distributors
 8     that all we do is we prepare the paperwork, vet it.
 9     It's submitted to 3M.  They create a reference number,
10     then the 3M attorney calls your buyer's attorney to
11     close escrow once (inaudible) is completed.  It's a
12     very simple process.  There's no risk on their part.
13     No one is asking them for money.
```

(Hise Decl., Ex. 2 at 9.) Similarly, 3M cites the Hise Declaration for the proposition that Starsiak claimed to be 3M's "number one sales team" and a "3M authorized distributor[.]" (3M Memo. at 10.) But this is nowhere in the transcript provided, and in fact is directly contradicted by the transcript as set forth above.

6. Also contrary to 3M's assertions, Starsiak never claimed to be representing Sir Richard Branson or the Gates Foundation. (3M Memo. at 9.) As Exhibit 1 to the Declaration of Haley Schaffer itself demonstrates, Starsiak was calling 3M at the request of William Kiriakopoulos (referred to as "Billy K" in some of the documents), who in turn noted his contact had a "very large fund which several very well-to-do people have contributed to." (*See* Haley Decl., Ex. 1 at 8.) Starsiak later referred to this in other written communications with 3M as "Billy's charity organization." (*Id.* at 4.) 3M is mischaracterizing the communications to suggest Starsiak purported to have some personal affiliation with Sir Richard Branson or Mr. Gates, when he never claimed to.[2]

7. The letter of intent attached as Exhibit 2 to the Declaration of Haley Schaffer did not originate from Starsiak or AMK Energy Services LLC, but from an entity named "Green Net, Inc." and is apparently signed by a "Kevin Allyn" as

---

[2] The transcript attached to Mr. Hise's Declaration further establishes this point. In that call, Starsiak is transcribed as stating, "I had another group that claimed they were with the Gates Foundation and claimed they had Elon Musk and Mr. Branson with the Virgin, and they – they asked me to get the attorneys on the line because they're so great, and they have a charity, and they want to purchase . . ." (Hise Decl., Ex. 2 at transcript page 8.)

"Founder".  Neither Starsiak nor AMK Energy Services LLC have any affiliation with Green Net, Inc. or Kevin Allyn.

3M's motion for a TRO and preliminary injunction should be denied.  Defendants will attend, through counsel, today's telephonic hearing on 3M's motion scheduled by the Court.

Respectfully submitted,

**MEAGHER & GEER, P.L.L.P.**

Dated:  June 25, 2020

By: s/Robert W. Vaccaro
Timothy R. Schupp (#130837)
Robert W. Vaccaro (#0313750)
33 South Sixth Street, Suite 4400
Minneapolis, MN  55402
Telephone:   (612) 338-0661
Facsimile:     (612) 338-8384
Email: tschupp@meagher.com
          rvaccaro@meagher.com

*Attorneys for Defendants Matthew Starsiak and AMK Energy Services LLC*