# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY, | Court File No.: 0:20-cv-01314 (SRN/TNL) |
| Plaintiff, | |
| v. | |
| MATTHEW STARSIAK, AMK ENERGY SERVICES LLC, and JOHN DOES 1 THROUGH 10, whose true names are largely unknown, | DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(2) MOTION TO DISMISS |
| Defendants. | |

## INTRODUCTION

Defendants Matthew Starsiak ("Starsiak") and AMK Energy Services LLC ("AMK") filed their Rule 12(b)(2) motion to dismiss this case and supporting papers on June 24, 2020. (ECF 27-31.) The Court permitted the parties to engage in limited jurisdictional discovery for purposes of exploring the issue of whether this Court has specific personal jurisdiction over Starsiak and AMK consistent with constitutional requirements. Such discovery was grounded on the following observation of the Court:

> While the Court finds that Plaintiff has adequately met the elements of specific personal jurisdiction for purposes of this TRO, it recognizes that Defendants present valid arguments to the contrary, and the record on this issue of specific personal jurisdiction is quite undeveloped at this time. Furthermore, as noted, the reach of *Calder* is limited, and the act of promoting and soliciting customers at the expense of competitors will not alone be sufficient to confer specific personal jurisdiction.

(Order on Plaintiff's Motion for a TRO (ECF 37) at 12-13.) The parties thereafter engaged in jurisdictional discovery, which included significant document productions on

both sides, as well as the depositions of Starsiak/AMK, Maryland attorney Eric Schuster ("Schuster"), and 3M Assistant General Counsel Haley Schaffer ("Schaffer").

To avoid repetition, Defendants refer to and incorporate herein the prior facts and arguments set forth in their motion to dismiss. Defendants provide this short supplemental brief, however, because jurisdictional discovery has provided refinement to the facts set forth in Defendants' motion. At the same time, this discovery has reaffirmed the extraordinarily tenuous connection between this matter and the State of Minnesota which, Defendants respectfully submit, is an insufficient basis upon which jurisdiction can be exercised over them. As such, Defendants request that their motion to dismiss for lack of personal jurisdiction be granted.

## SUPPLEMENTAL BACKGROUND

Starsiak and AMK will provide more fulsome background and details in connection with their submission in opposition to 3M's motion for preliminary injunction. But Starsiak and AMK emphasize the following facts for purposes of the present motion to dismiss.

First, as Defendants noted in their initial submission, Starsiak operates a Service-Disabled Veteran-Owned Small Business (SDVOSB) whose work largely involves humanitarian and charitable interests and the hiring, as needed, of former veterans to perform such work. (ECF 29 at 3-4.) Neither Starsiak nor AMK ever endeavored to purchase or sell any 3M respirators, or any 3M products generally, on their own account—nor could they given the restrictions they understood to be in place concerning Personal Protective Equipment (PPE) at the time. (Vaccaro Decl., Ex. A (Starsiak Dep.)

2

at 46:6-13.) Starsiak's and AMK's connection to 3M was initiated by a request from certain third-parties who claimed an affiliation with government and charitable concerns. AMK's role was to be limited to making the necessary business connections to facilitate and intermediate any such purchases or re-sales of genuine 3M products. But even this limited role does not fairly describe the reality of the work that Starsiak and AMK actually undertook related to 3M respirators. Given the market conditions prevailing in the early phase of the pandemic, Starsiak and AMK were completely unsuccessful in being able to facilitate any purchases or re-sales of any 3M respirators, on behalf of anyone. (Starsiak Dep. at 186:13-22.)

The connections between Starsiak/AMK and 3M were limited, and occurred over a short time frame—just about one month. The sum and substance of these contacts, confirmed through jurisdictional discovery, were as follows:

1. At some point in late April or early May, 2020, Starsiak left a voicemail for 3M's Kourosh Motalebi to ask him about identifying an authorized 3M distributor. (Vaccaro Decl., Ex. A (Starsiak Dep. at 85:15-86:11); Ex. B (Schaffer Dep. at 12:7-12).) Starsiak was given Mr. Motalebi's contact information by Schuster, a friend and business contact of Starsiak located in Maryland, who had previously requested this information from 3M's General Counsel Ivan Fong. (Vaccaro Decl., Ex. C (April 27, 2020 Emails).) Schuster was not an employee, contractor, or other representative of AMK. (Starsiak Dep. at 41:11-24.) Mr. Motalebi never returned Starsiak's call. (Starsiak Dep. at 86:9-13.)

2. Schaffer affirmatively **contacted Starsiak** on the morning of May 11, 2020, at the request of 3M General Counsel Ivan Fong. (Vaccaro Decl., Ex. B (Schaffer Dep.) at 45:2-4.) The day before, Schuster had requested that Fong put someone in touch with Starsiak. (Vaccaro Decl., Ex. D (May 10, 2020 Email).) Starsiak/AMK were not copied on this email. (*Id.*)

3. Later in the morning of May 11, Mica Xavier ("Xavier"), an AMK contractor based in Georgia, sent Schaffer an email with conference call dial-in instructions. (Vaccaro Decl., Ex. E (May 11, 2020 Email with Conference Call Instructions).) Schaffer **called into the conference line** along with two of her 3M colleagues who were investigating COVID-related fraud on behalf of 3M, Global Corporate Security officer and former FBI agent Joel Van Heyst, and 3M Trademark Counsel and corporate fraud investigator Michael Gannon. (Schaffer Dep. at 48:4-6; 51:24-52:10.) These individuals had a brief discussion with Starsiak and others about 3M respirators. (Vaccaro Decl., Ex. F (Transcript of 5/11/20 Conference Call).) Schaffer did not disclose Van Heyst's or Gannon's role at 3M to Starsiak on the call, but simply stated that they were "working on our respirator issues with me." (*Id.* at 3:25-4:3.)

4. A small handful of emails were exchanged between Starsiak and Schaffer/Fong after these calls, between May 11 and June 4, 2020. Until the present lawsuit, Starsiak was not aware that 3M was headquartered in Minnesota, nor that Fong or Schaffer were located in Minnesota at the time of the communications. (Starsiak Dep. at 66:21-68:6; 72:14-21.)

4

5. Around the close of business on June 5, 2020, the day that 3M's Complaint was filed in this action, Starsiak left a voicemail for and had a brief discussion with Schaffer, during which nothing of substance was discussed (presumably because the Complaint had already been filed). (Schaffer Dep. at 48:20-49:5.)

It must be stressed that all of the above are contacts with 3M representatives—at least some of whom were apparently physically located in Minnesota—but not with the State of Minnesota itself. As for actual contacts between Starsiak/AMK and Minnesota, they are truly scant, if not nonexistent. In addition to the lack of contacts outlined in Defendants' opening brief, and as noted above, discovery has confirmed that Starsiak/AMK did not close a single transaction related to 3M respirators, whether having any connection to Minnesota or not. (Starsiak Dep. at 180:21-25; 186:13-22.) 3M itself acknowledges no sales occurred. (Schaffer Dep. at 128:10-18.) Moreover, Starsiak/AMK did not receive any money related to purchases or re-sales of any 3M respirators, whether in Minnesota or elsewhere. (Starsiak Dep. at 186:13-22.) Schaffer, 3M's corporate witness, testified she "couldn't recall" whether any fund escrow had ever occurred. (Schaffer Dep. at 129:6-20.) Finally, Starsiak/AMK did not solicit a single customer for the re-sale of 3M respirators in Minnesota; in fact, other than the above-noted limited contacts with 3M, Starsiak has had no business activities with any entities in Minnesota. (Starsiak Dep. at 27:2-8.)

The lone alleged solicitation that 3M points to is a PPE distributor (not 3M authorized) named "Star Brands Group" in New York. 3M has no knowledge about Star Brands Group or its bona fides, but received a report from one of its representatives,

Matthew Hise, submitted through 3M's website. (Schaffer Dep. at 74:16-77:17.) Despite using Mr. Hise's report and other aspects of its investigation affirmatively against Starsiak/AMK, 3M asserts that its investigation, including follow-up in connection with the Hise report, is privileged and refuses to disclose it. (Schaffer Dep. at 35:7-36:12; 87:9-88:11; *see also* ECF 16-1 (Hise Report) at 4-6 (note various redactions from Hise report).)

Defendants produced in discovery certain draft broker position documents in which Starsiak/AMK is mentioned. These documents contain an addressee at the Dorsey & Whitney law firm in Minneapolis. During the Starsiak/AMK deposition, 3M's counsel questioned Starsiak extensively about these documents—presumably because, of the thousands of pages produced, they are among the miniscule number (including the subject 3M communications) that even mention "Minnesota" or "MN". The documents appear to be incomplete drafts; none are signed. Starsiak/AMK did not draft or send these documents to the addressee, and it is unknown if anyone, in fact, ever sent them to the addressee, whether in Minnesota or otherwise. (Vaccaro Decl., Ex. G (Notice of Broker Position at DEFS002153; Starsiak Dep. at 147:1-149:14.) In any event, the documents certainly were never sent to 3M, as 3M did not produce them in discovery.

## SUPPLEMENTAL ARGUMENT

The tenuous connection between Starsiak/AMK and the forum state requires 3M to resort to an argument that Defendants "targeted" conduct specifically at Minnesota and that 3M experienced harm in Minnesota, since Minnesota is the location of its corporate headquarters. Because traditional contacts with Minnesota are absent, this argument is

6

forced to rest upon a broad and generous conception of the "effects test" of *Calder v. Jones*—contrary to how the Eighth Circuit has instructed the district courts to interpret it. 3M's approach would permit any corporation to conveniently sue a party for entirely out-of-state activity on the grounds it faced "injury" in the state of its corporate residence. Despite 3M's urging, *Calder* cannot be uncoupled from traditional minimum contacts analysis to create a standalone basis for jurisdiction.

To establish specific personal jurisdiction under *Calder*, "a plaintiff must make a prima facie showing that 'the defendant's acts (1) were intentional, (2) were 'uniquely' or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—there." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Critically, and as this Court recognizes, *Calder* is not sufficient on its own to justify the exercise of personal jurisdiction. *3M Co. v. Starsiak*, Case No. 20-cv-1314, 2020 WL 3566718, *5 (D. Minn. Jun. 26, 2020) (citing *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2020) (*Calder* test is merely an "additional factor to consider" when evaluating contacts)). Moreover, the assessment of *Calder* requires the court to focus on "contacts and conduct with the forum state *itself*, not the defendant's contacts with persons who reside there." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (emphasis in original). The Eighth Circuit has made clear that it construes "the *Calder* effects test narrowly." *Johnson*, 614 F.3d at 796. "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.*

7

Here, 3M cannot identify any intentional tort committed in Minnesota (or anywhere else). The centerpiece of its argument for directed malfeasance was that Starsiak/AMK misrepresented to 3M, before the relevant telephone discussions, that Starsiak was "getting the run around by 3M escrow attorneys", which 3M argues was a pretext for Starsiak to seek out the assistance of 3M's legal counsel in Minnesota. (Compl. [ECF 1] at ¶ 48.) This is a fabrication. Schaffer acknowledged in her deposition that, during the relevant phone call, Starsiak acknowledged that neither he nor AMK had spoken personally to any 3M attorneys; indeed, that was the entire purpose for him wanting to get in touch with 3M's legal team. (Schaffer Dep. at 134:15-22.) And as the relevant email sent prior to this call clearly disclosed, Starsiak was simply reporting to Schuster what he had been advised by the customers he was representing. (Vaccaro Decl., Ex. H (May 9, 2020 Email).) 3M's Complaint mischaracterizes these communications to suggest a misrepresentation where none occurred.

Moreover, nothing in the Star Brands Group communications is relevant to jurisdiction in Minnesota, since they have no connection to Minnesota. Nevertheless, the assertion of Star Brands Group's Matthew Hise that Starsiak represented AMK was "3M's number one sales team" or an "authorized 3M dealer" finds no support from the phone call transcripts that Hise provided. The context of the recorded call makes clear that it was Starsiak's first (and last) communication with Star Brands Group. Contrary to Mr. Hise's Declaration (ECF 16 at ¶ 7), not once does Starsiak or any other AMK representative claim to be 3M's number one sales team or an authorized 3M dealer. Instead, on the call, Starsiak states that he was "working with" 3M distributors—a key

distinction 3M ignores. (ECF 16-2 at 14 (Transcript Page 9:2-13).) Again, 3M takes liberties with the actual communications to wrongly imply malfeasance without evidence.

3M also cannot show that any conduct of Starsiak/AMK was "uniquely" or "expressly" aimed at Minnesota, or caused harm that Starsiak/AMK knew was likely to be suffered in Minnesota. *Calder*, 465 U.S. at 790. Starsiak did not know 3M or its Office of Legal Counsel were based in Minnesota, or that the 3M individuals he spoke with were in Minnesota.[1] 3M makes much of the office and personal residences of the individuals with whom Starsiak/AMK communicated. But these isolated contacts do not constitute "contacts and conduct with the forum state *itself*" such as to justify personal jurisdiction here. *Whaley*, 946 F.3d at 451. Finally, the question of harm to 3M in this case involving no closed transactions, no money transfers, no solicitations in Minnesota, and one alleged solicitation in New York resulting in an immediate report to 3M, is entirely speculative. Even under *Calder*, minimum contacts are lacking.

## CONCLUSION

Traditional minimum contact analysis does not support the Court's exercise of jurisdiction over Defendants' limited interactions with 3M representatives in this case. *Calder* is not—and should not be allowed to become—the tail that wags the dog. Rather,

---

[1] 3M's Minnesota-based counsel purported to express surprise that Starsiak, a Utah resident, wouldn't know that "Minnesota Mining and Manufacturing" was based in Minnesota. (Starsiak Dep. at 67:12-68:6.) Of course, while many longtime Minnesota locals might know that as 3M's former name, it is hardly common knowledge. 3M does not use that name anymore and, according to its website, it has not done so since 2002. https://www.3m.com/3M/en_US/company-us/about-3m/history/timeline/ (last accessed August 10, 2020).

9

it is but one aspect of that minimum contacts analysis. Even then, the Court must ensure that a bona fide connection exists between the Defendants, the controversy, and the forum state that satisfies constitutional prerequisites. As previously noted, this inquiry necessarily focuses on "the defendant's relationship to the forum State," *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017), and the "primary concern" is "the burden on the defendant." *Id.* at 1780 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Jurisdictional discovery has confirmed sufficient minimum contacts do not exist here. Defendants therefore respectfully submit that this Court should decline to exercise personal jurisdiction over this Utah defendant and his Utah small business, and dismiss this lawsuit against them.

Respectfully submitted,

**MEAGHER & GEER, P.L.L.P.**

Dated: August 10, 2020  By: s/Robert W. Vaccaro
Timothy R. Schupp (#130837)
Robert W. Vaccaro (#0313750)
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone: (612) 338-0661
Facsimile: (612) 338-8384
Email: tschupp@meagher.com
rvaccaro@meagher.com

*Attorneys for Defendants Matthew Starsiak and AMK Energy Services LLC*