# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| 3M COMPANY, | Court File No.: 0:20-cv-01314 (SRN/DTS) |
| Plaintiff, | |
| v. | |
| MATTHEW STARSIAK, AMK ENERGY SERVICES LLC, and JOHN DOES 1 THROUGH 10, whose true names are largely unknown, | **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(2) MOTION TO DISMISS** |
| Defendants. | |

---

3M's sanctimonious—and jurisdictionally irrelevant—smear campaign against Defendants continues. 3M leads off by declaring that, if one tries to "defraud someone" in Minnesota, then one "shouldn't be surprised to be sued here." (3M Opp. Br. [ECF 56] at 1 (citing *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001)). The problem is that 3M does not assert a fraud claim against Defendants in this case; this is a trademark infringement action. (3M Opp. Br. at 35 ("The crux of 3M's claims concern harm to 3M's brand image and reputation, not whether Defendants were successful or profitable in their business endeavors.") As such, the relevant question for purposes of this motion is whether a sufficient connection exists between the *alleged trademark*

*infringement* and Defendants' contacts with the State of Minnesota to enable the Court to appropriately exercise personal jurisdiction, consistent with constitutional imperatives.[1]

3M ties Defendants' allegedly "fraudulent activity" to its Lanham Act infringement claims in one lonely, conclusory sentence: "This fraudulent scheme is intimately tied to the violations of the Lanham Act and other related Minnesota laws presented in 3M's Complaint." (3M Opp. Br. at 34.) 3M provides no explanation on that point, and it cannot, because "fraud" has nothing to do with trademark infringement. *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497, 206 L. Ed. 2d 672 (2020) (plaintiff in trademark case not required to show any willful conduct to demonstrate infringement). Moreover, 3M does not allege the necessary elements of a fraud claim, and they are otherwise absent here. Among other things, 3M must have acted in reliance upon Defendants' alleged representations and must have suffered damages as a result of that reliance. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). 3M does not allege this, and it did not occur. This is simply a garden variety trademark infringement case.

---

[1] 3M again presents a lengthy soliloquy about the various allegedly "fraudulent" activities Defendants directed toward 3M in Minnesota, for which 3M asserts no cause of action. Defendants continue to deny 3M's misleading factual recitation but, as explained below, most of it has no relevance to the question of whether the requisite connection exists between 3M's trademark infringement claims and Defendants' activities in Minnesota—*i.e.*, the requirements of specific personal jurisdiction. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 n.4 (8th Cir. 1995) (specific jurisdiction is "jurisdiction over *causes of actions* arising from or relating to the defendant's actions in the forum state.") (emphasis added).

Because 3M's Complaint asserts no cause of action related to any allegedly intentional, tortious and harmful conduct against 3M in Minnesota (which might give 3M a jurisdictional hook under *Calder v. Jones*, 465 U.S. 783 (1984)), and the sum and substance of this lawsuit concerns a single instance of alleged trademark infringement by false affiliation communicated to Star Brands Group in New York, personal jurisdiction does not exist here. The Court should reject 3M's proposed misapplication of *Calder*, particularly since the doctrine is to be narrowly, not expansively, applied. *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010); *see also A-1 Nat'l Fire Co. v. Freedom Fire LLC*, Case No. 20-CV-1706, 2020 WL 5105793, *2 (D. Minn. Aug. 31, 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (plaintiff's forum connections not attributable to defendant, since it would "impermissibly allow a plaintiff's contact with the defendant and the forum to drive the jurisdictional analysis.").

But there is a bigger problem. 3M has no evidence—despite Defendants' fulsome document production of non-privileged 3M-related documents over the relevant time period, and 3M's own production—of *any* consummated commercial activity within the State of Minnesota or elsewhere (*i.e.*, closed purchase or sales transactions). This is not merely a "deficiency" as to one contact in the jurisdictional analysis; it defeats jurisdiction. *See Cortec Corp. v. Transilwrap Co., Inc.*, Case No. 14-CV-3261, 2015 WL 164173, *5 (D. Minn. Jan. 13, 2015) (motion to dismiss trademark infringement action for lack of personal jurisdiction granted because there was no connection between plaintiff's cause of action for trademark infringement and any "sales activity" by defendants in Minnesota).

As discussed below, *every case* that 3M cites in which a federal court has determined jurisdiction exists over a defendant in a given forum involves either (1) in the case of non-trademark decisions, an actual contract or contracts under which the parties operated, or which at least explained the parties' relationship; or (2) in the case of trademark decisions, actual infringement in the forum. These features, standing alone, may not be sufficient to confer jurisdiction, but they are a *sine qua non* of jurisdiction—and they do not exist here. Recognizing the deficiency, 3M attempts to contrive additional "contacts" between Defendants and Minnesota that do not exist. These manufactured additional contacts do not relate to the core jurisdictional requirements—a contract or forum infringement—derived from caselaw.

As such, this purported trademark infringement case lacks a sufficient connection to Minnesota justifying the exercise of jurisdiction consistent with constitutional constraints. More colloquially—and to borrow a term from a former presidential candidate—this case is a "nothing burger". 3M presents inflated allegations and claims in an attempt to justify inflated time and expense incurred by a similarly inflated legal team. Among 3M's overblown claims is that Mr. Starsiak and AMK hoped to reap "billions of dollars" in profit from sales of 3M respirators. Mr. Starsiak was attempting to act as an intermediary in connection with transactions involving genuine 3M respirators. He attempted to connect buyers with sellers, never proposed to take title to any 3M respirators, never set a price on any 3M respirators, and never was going to be a conduit for the transfer or receipt of funds stemming from any 3M respirator transactions.

At best, he hoped to receive some small fraction of a commission available in connection with a consummated purchase or sale—which undisputedly never occurred.

Defendants' motion to dismiss for lack of personal jurisdiction should be granted.

## **ARGUMENT**

### **SPECIFIC PERSONAL JURISDICTION OVER DEFENDANTS DOES NOT EXIST, BECAUSE THERE IS NO EVIDENCE OF A CONTRACT BETWEEN THE PARTIES, INFRINGEMENT IN THE STATE OF MINNESOTA, OR OTHER SUFFICIENT SUPPORTING CONTACTS TO JUSTIFY HALING THE UTAH-BASED DEFENDANTS INTO THIS COURT.**

Specific personal jurisdiction is justifiable when "a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum in a suit arising out of or related to the defendants contacts with the forum." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746 (8th Cir. 2011) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011) (internal quotations omitted) (affirming finding that no jurisdiction existed as to alleged trademark infringer operating outside forum state, despite alleged infringer's one physical trip to forum). "The question is whether a defendant has followed a course of conduct directed at the *society or economy* existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." *Id.* (quoting *J. McIntyre*, 131 S. Ct. at 2789) (emphasis added).

## I. JURISDICTIONAL DISCOVERY DOES NOT BOLSTER, BUT RATHER DEFEATS, THE CASE FOR JURISDICTION HERE.

### A. 3M's Jurisdictionally Irrelevant Facts Should be Disregarded.

Defendants accurately described the contacts between Defendants and 3M's representatives in their opening and supplemental briefs relating to jurisdiction, and in opposition to 3M's motion for preliminary injunction. (ECF 29 at 4-5; ECF 47 at 2-6; ECF 52 at 7-13.) 3M references these contacts, but also asserts additional "facts" that have no relevance to the jurisdiction question, such as statements about the size of Mr. Starsiak's business, its New York address, and Mr. Starsiak's acknowledgement that fraud is "bad." (3M Opp. Br. at 3-4.) 3M outlines such facts in an apparent effort to cast Defendants in a poor light as supposedly "bad actors" with the Court. Such "facts" have nothing to do with personal jurisdiction in Minnesota, and should be disregarded.

### B. 3M Misconstrues Various Documents in an Attempt to Bolster a Weak Case for Jurisdiction.

#### 1. The Additional "Contacts" From Discovery

Recognizing the weak jurisdiction case, 3M deceptively describes a number of documents that Defendants produced in discovery, contending they demonstrate additional contact with Minnesota when they do not. The Court should take note of the careful language 3M uses to describe these exhibits. None were actually sent to 3M or to Minnesota.

For example, 3M claims that, on May 2, 2020, "Defendants *appear to have submitted* a purchase order for over $1 billion in 3M N95 masks directly to 3M's Minnesota headquarters and, on top of that, two days later wrote a letter to 3M's

6

Minnesota headquarters asking that the orders be processed 'as quickly as possible.'" (3M Opp. Br. at 10) (emphasis added). The referenced exhibit (Bundy Exhibit 14 [ECF 54-14]) is a purchase order from a company named Bionica, not AMK. The fields of the invoice are not complete. And Defendants produced this document, not 3M. If the document had actually been sent to 3M's "headquarters" in St. Paul, the Court can rest assured 3M would have produced it to bolster its jurisdictional case. The document was never sent to 3M.

The same holds true for Exhibit 15 attached to the Bundy Declaration. The addressee of this letter is "3M General Counsel" at 3M Center in St. Paul. This letter could have constituted a correspondence contact with 3M, if it had been sent, but 3M also did not produce this document in discovery, indicating it never received this document either.[2]

3M also references the draft broker position document that Defendants have already addressed. (Bundy Decl., Ex. 27 [ECF 54-27].) 3M's exhibit includes emails with the broker position document that, according to 3M, "*suggest that it was sent*" to Dorsey & Whitney in Minneapolis. The emails do nothing of the kind. Instead, the email reveals that Mr. Starsiak submitted the broker position document to an attorney

---

[2] 3M describes a text message that mentions the word "Minnesota." (3M Opp. Br. at 9.) Defendants previously addressed this message. (ECF 52 at 12.) 3M acknowledges it has no evidence that this transaction or any other was actually consummated. (Vaccaro Opp. Decl. [ECF 48], Ex. B (Schaffer Dep.) [ECF 48-2] at 128:10-18.)

7

named Bruce Holden, a *California* attorney with the law firm Gordon Rees Scully Mansukhani, LLP. (*Id.* at 3.)

3M fully appreciates the tenuous nature of Defendants' contacts with Minnesota. That is why it felt compelled to contrive additional supposed "contacts" between Defendants and Minnesota, artfully described with modifiers such as "*appear to have submitted*" and "*suggest that it was sent*" in order to avoid a complete falsehood.

### 2. The Hise Allegation

Separately, 3M again references Mr. Starsiak's discussion with Matthew Hise of Star Brands Group, during which 3M claims Mr. Starsiak misrepresented to Mr. Hise that Mr. Starsiak was in "regular" contact with 3M's Ivan Fong and Haley Schaffer. (3M Opp. Br. at 17.) But then, because 3M conceives it will help its jurisdiction case, 3M also states that "[t]hroughout the time of Defendants' scheme, they contacted 3M on almost 30 occasions." (3M Opp. Br. at 18.) These positions cannot be reconciled. If Defendants contacted 3M on "almost 30 occasions", as 3M alleges, then that constitutes "regular" contact for purposes of Mr. Starsiak's discussion with Mr. Hise and, by 3M's own admission, there is no false affiliation claim. 3M should not be able to take inconsistent factual positions depending on the point it is trying to advance with the Court.

### C. 3M Asks the Court to Presume, Without Evidence or Analysis, Agency for Jurisdictional Purposes.

3M also asks the Court to make a summary determination of agency, without the necessary quantum of proof, to impute contacts of supposed agents—primarily Eric

8

Schuster and Tim Dupler—to AMK for "jurisdictional purposes." Even if the Court indulged 3M's inappropriate request to presume agency, none of the contacts are sufficient to establish jurisdiction in Minnesota. As with Mr. Starsiak's limited contacts with 3M, Mr. Schuster's contacts amounted to a small number of emails to Mr. Fong and a phone discussion with Ms. Schaffer. Mr. Dupler's contacts with 3M or Minnesota are even less apparent, if not entirely nonexistent. There is no evidence either individual has ever traveled to Minnesota with respect to any issue involved in this lawsuit (or ever), or otherwise purposefully availed himself of Minnesota law.

3M performs no factual or legal analysis of agency principles; it merely asks the Court to presume agency. The essential elements of an agency relationship are (1) consent to agency by the parties; (2) a fiduciary relationship; and (3) the principal's right to control the agent. *Jurek v. Thompson*, 241 N.W.2d 788, 793 (Minn. 1976) (in the absence of persuasive evidence of such elements, there "is no agency as a matter of law."). All of the elements are important, but the principal's right to control the agent's actions is particularly critical. *BE & K Const. Co. v. United Bhd. of Carpenters and Joiners of Am.*, 90 F.3d 1318, 1326 (8th Cir. 1996) (an "essential element of any agency claim is that the asserted principal has the right to control the actions of the asserted agent.") Moreover, "[a]gency is never presumed, and if an agency relationship is denied, the party alleging agency must establish it by clear and convincing evidence." *Metro Sales, Inc. v. Core Consulting Group*, 275 F. Supp. 3d 1023, 1044 (D. Minn. 2017).

3M presents no relevant evidence as to agency; it merely asserts it as a "fact" with nothing more. Mr. Schuster is an attorney and partner at a Maryland law firm, Funk &

Bolton, where he has practiced for eleven years. (Second Vaccaro Decl., Ex. I (Schuster Dep.) at 23:14-24:1.) Mr. Schuster testified that he never received any payments or fees from Mr. Starsiak or AMK. (*Id.*, Schuster Dep. at 30:19-21.) Mr. Schuster introduced 3M's Ivan Fong, one of Mr. Schuster's personal contacts, to Mr. Starsiak. (*Id.* at 38:15-39:14.) Mr. Schuster testified about his primary motivation in making such connections:

> Q. . . . Mr. Schuster, what was in it for you if Mr. Starsiak did move forward with any of your mask suppliers?
>
> A. My primary – my – to answer your question, sir, I enjoy putting people together on deals in the hopes that – primarily that there might be a benefit to my law firm, whether it be potentially handling a particular transaction or if not, securing the – you know, impressing the two involved parties so that perhaps they could make referrals down the road. I do that fairly regularly with my banking clients. If I have potential borrowers who are not my clients who might be interested, I put them in touch with my banking clients or people I'd like to have as banking clients in hopes that I might be able to get legal business down the road. That's my primary motivation.

(Schuster Dep. at 42:12-25.) No agency existed between AMK and Mr. Schuster. Among other things, there is a complete lack of proof that Mr. Starsiak or AMK controlled anything Mr. Schuster did.

Similarly, Mr. Dupler was not authorized to act on behalf of AMK. (Starsiak Dep. [ECF 53-1] at 87:21-89:5.) Mr. Starsiak believed he was an authorized 3M distributor who was able to see allocations available for 3M respirators and obtain genuine 3M products. (Starsiak Dep. [ECF 53-1] at 58:20-59:9.) Again, there is a complete lack of proof that Mr. Starsiak or AMK controlled anything Mr. Dupler did. In addition, 3M does not identify any relevant contacts that Mr. Dupler had with the State of Minnesota that could be imputed to AMK in the first instance.

## II. 3M'S CASELAW IS DISTINGUISHABLE, AND ACTUALLY DEMONSTRATES WHY PERSONAL JURISDICTION SHOULD NOT BE FOUND TO EXIST HERE.

3M cites a number of cases finding specific jurisdiction over a defendant appropriate. Although their facts vary, the cases are united in the bare essentials required to sustain personal jurisdiction over a defendant. These bare essentials involve either some form of commercial relationship founded in, or at least related to, a contract (in 3M's non-trademark cases) or evidence of infringement in the forum state (in 3M's trademark cases). This case involves neither. As such, not only are 3M's cases readily distinguishable from this case, but they actually support the view that jurisdiction here—where no contracts exist and the only claim of alleged infringement relates to activity in New York—is inappropriate.

### A. 3M's Non-Trademark Cases

In all of 3M's cases finding jurisdiction against defendants in the non-trademark realm, there exists some underlying commercial relationship between the parties, formalized and evidenced by contract.

For example, in *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001), the Eighth Circuit found that personal jurisdiction existed over two principals of a pencil and crayon supplier. The supplier entered into two supply contracts with plaintiff, pursuant to which plaintiff agreed to purchase a specific number of pencils and crayons at an established price. 236 F.3d at 941. The principals negotiated the contracts by phone and facsimile and, after they were signed, maintained "constant communication" by phone about the location and arrival of the goods. *Id.* The principals submitted invoices

to plaintiff in the amount of $360,886.32, which they represented constituted anti-dumping duties imposed on product shipments. *Id.* After a customs policy change, plaintiff tried to obtain a refund from defendants but was unsuccessful, prompting its suit for breach of contract and misrepresentation. *Id.* at 942. Among other contacts, the court found defendants "initiated a business relationship with OTC and negotiated contracts with" plaintiff. *Id.* at 943.

In *Travel Leaders Leisure Grp., LLC*, Case No. 19-CV-02871, 2020 WL 4604534 (D. Minn. Aug. 11, 2020), this Court found the exercise of jurisdiction proper over the president of a luxury travel business, Baumann, and the corporate entity in a non-compete case brought by the president's former Minnesota-based employer. Among other Minnesota contacts, Baumann had an Employment Agreement with his former employer, and also subsequently entered into a Settlement Agreement, governed by Minnesota law, addressing issues of non-solicitation, non-competition, and confidentiality. 2020 WL 4604534 at *3-4. The Court additionally permitted most of Baumann's contacts to be imputed to his new employer for jurisdiction purposes. *Id.* at *13-14.

In *BioE LLC v. Mediatech, Inc.*, Case No. 10-2085, 2011 WL 31727 (D. Minn. Jan. 5, 2011), another unpublished non-trademark case, the Court found the exercise of personal jurisdiction over a non-resident medical products manufacturer appropriate in a case alleging contract and tort claims. Again, among other contacts—including more than 20 teleconferences with plaintiff business over a span of years and personal visits with plaintiff's representatives—a Supply Agreement existed among the parties under which defendant partially performed. 2011 WL 31727 at *1.

In *Markay v. Leading Solutions, Inc.*, Case No. 3:06-CV-105, 2007 WL 2822758 (D. Minn. Sept. 26, 2007), another unpublished case, the Court exercised personal jurisdiction over the defendant businesses based on certain written Agency Agreements. Plaintiff alleged contract and tort claims against defendants related to these agreements. 2007 WL 2822758 at *3.

And in *Finley v. River North Records, Inc.*, 148 F.3d 913 (8th Cir. 1998), the Eighth Circuit affirmed the district court's exercise of jurisdiction over defendants, a booking agency and record company, in connection with a failed music concert. Plaintiff concert promoters entered into a contract with the booking agent to promote a concert at a local university. Although the record company was not a party to that contract, the court found that the record company had hired the booking agency to contract with promoters such as plaintiff. 148 F.3d at 915. As such, it attributed the acts of the booking agency—in particular, its contract with the plaintiff—to the record company in finding jurisdiction existed over it. 148 F.3d at 915.[3]

All of these cases involve underlying contracts and some form of actual commercial relationship between the parties, which is absent in this case.

---

[3] It is not insignificant that the decision in *Finley* was rendered after a jury determined, in fact, that the record company committed fraud in inducing the plaintiff to promote the concert by misrepresenting certain musicians would perform there, and that plaintiff incurred $15,182 in out-of-pocket costs and $70,000 in lost future profits stemming from the contract. 148 F.3d at 916-17.

13

### B. 3M's Trademark Case

In the trademark realm, the case that 3M cites in which a court found jurisdiction to exist—*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir. 1991)—involved infringement activities on the part of the defendant within the forum itself.

*Dakota Industries* is a "passing off" trademark infringement case in which the Eighth Circuit reversed the district court's holding that personal jurisdiction did not exist in South Dakota over a California clothing manufacturer. Plaintiff Dakota Industries was the registered holder of the "Dakota" trademark and sold women's clothing. 946 F.2d at 1386. Defendant Dakota Sportswear also manufactured women's clothing, which bore the label "Dakota Sport". *Id.* Dakota Industries submitted various evidence of "Dakota Sport" clothing being sold in South Dakota. *Id.* at 1386-87. On this basis, the court found that personal jurisdiction over Dakota Sportswear was proper. *Id.* at 1388-89.

3M mischaracterizes *Dakota Industries* (and *Pangaea, Inc.*) when 3M states that "[a]s a matter of law, in the Eighth Circuit, a party's [sic] whose trademarks are infringed is harmed in its principal place of business." (3M Opp. Br. at 34.) This is an aspirational view of the law, to put it charitably. *Dakota Industries* actually identified the majority rule as being that a trademark infringement claim arises at the place of the "passing off", which is "where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." 946 F.2d at 1388 (citing *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S. Ct. 96, 1 L. Ed. 2d 76 (1956); *Tefal, S.A. v. Products Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976) ("It is undisputed

14

that a cause of action for trademark infringement arises where the passing off occurs"); *Schieffelin & Co. v. Jack Co.*, 725 F. Supp. 1314, 1319 (S.D.N.Y. 1989) (trademark infringement claim arises where the deceived customer buys the defendant's product)). This accords well with the general purpose of trademark law—namely, the prevention of confusion to the public caused by a party "palming off his goods as those of another." *Miller Brewing Co. v. Carling O'Keefe Breweries,* 452 F.Supp. 429, 445 (W.D.N.Y.1978). A trademark infringement by false affiliation claim should not be treated any differently. Here, the alleged cause of action relates to Star Brands Group in New York, not Minnesota.[4]

3M's misrepresentation of *Dakota Industries* attempts to circumvent *Calder*'s refusal to find personal jurisdiction based solely on the "mere effects" of conduct elsewhere. *Calder* provides that a defendant's tortious acts may serve as a source of personal jurisdiction "only" where plaintiff shows the acts (1) were intentional; (2) were uniquely or expressly aimed at the forum state; and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state. *Johnson*, 614 F.3d at 796.

---

[4] *Dakota Industries* did recognize that one case out of the Northern District of Illinois identified the site of injury as where the plaintiff suffers the "economic impact". *Dakota Indus.*, 946 F.2d at 1388. This is the minority position. The *Dakota Industries* court did not need to decide which rule was more appropriate, since both the alleged infringement and plaintiff's principal place of business were in South Dakota. *Id.* at 1388-89. That is not the case here. Of course, as noted above, 3M does not even have any evidence of any actual sale to Star Brands Group in the first instance, but if it did, it would have occurred in New York, not Minnesota.

15

As noted above, 3M did not act in reliance on, and did not suffer any alleged harm in Minnesota due to, Defendants' communications with 3M representatives Fong and Schaffer; 3M closed the door on Defendants. Any "harm" in Minnesota flowed from the alleged trademark infringement, which occurred, if anywhere, in New York. If such harm occurred, which is denied, only its "mere effects" were felt in Minnesota, which is insufficient under *Calder* to establish jurisdiction. *Cortec Corp.*, 2015 WL 164173 at \*5 (dismissing trademark infringement action for lack of personal jurisdiction where no connection existed between plaintiff's cause of action for trademark infringement and any "sales activity" by defendants in Minnesota). If 3M's view about place-of-injury in a trademark infringement case were accepted, it would permit a trademark holder to sue an alleged infringer in the state of the trademark holder's headquarters, irrespective of where the alleged infringement actually occurred. This would constitute a departure from the law and an overreach destroying any meaningful constitutional protection for out-of-state parties involved in such claims, like those at issue here.

## CONCLUSION

Personal jurisdiction over Defendants does not exist in this case. 3M is attempting to satisfy *Calder* by borrowing supposedly intentional, tortious conduct in Minnesota—for which it asserts no claim—and trying to "stick" that conduct onto its trademark infringement by false affiliation claim, which has no connection to Minnesota other than the "mere effects" of 3M's alleged trademark injury here. For the reasons set forth above, and mindful of *Calder*'s limited scope, Defendants respectfully request that the

16

Court decline to permit this expansive view of jurisdiction to prevail in this case, and dismiss the Complaint.

Respectfully submitted,

**MEAGHER & GEER, P.L.L.P.**

Dated: September 2, 2020    By: s/Robert W. Vaccaro
Timothy R. Schupp (#130837)
Robert W. Vaccaro (#0313750)
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone: (612) 338-0661
Facsimile: (612) 338-8384
Email: tschupp@meagher.com
rvaccaro@meagher.com

*Attorneys for Defendants Matthew Starsiak and AMK Energy Services LLC*